Health Services Planning and Review Board
No. 99-790

APPEAL OF PORTSMOUTH REGIONAL HOSPITAL

(New Hampshire Health Services Planning and Review Board)

Argued: March 6, 2002
Opinion Issued: July 16, 2002

*Orr & Reno, P.A.*, of Concord (*John A. Malmberg* on the brief and orally), for the petitioner, Portsmouth Regional Hospital.

*Rath, Young and Pignatelli, P.A.*, of Concord (*Lucy C. Hodder* and *Christopher J. Sullivan* on the brief, and *Ms. Hodder* orally), for the respondent, Northeast Surgical Care, LLC.

DUGGAN, J. The petitioner, Portsmouth Regional Hospital (Portsmouth Regional), appeals from a decision of the New Hampshire Health Services Planning and Review Board (board) that the Northeast Surgical Care Project (the project), owned and developed by the respondent, Northeast Surgical Care, LLC (Northeast Surgical), was exempt from regulations under RSA chapter 151-C (1996). We affirm.

Pursuant to RSA chapter 151-C, all new institutional health services must obtain a certificate of need (CON) from the board prior to offering or developing such services within the State. *See* RSA 151-C:4, I. However, if a facility meets the requirements of one of the exclusions under RSA 151-C:13, the board has no regulatory authority and the project is not subject to CON review. *See Appeal of N.H. Catholic Charities*, 130 N.H. 822, 827-28 (1988).

In 1999, Northeast Surgical requested a waiver from CON review of the project because "the total cost of the project is well under the CON thresholds." *See* RSA 151-C:13, I(f). Portsmouth Regional filed a petition to intervene, asserting that the project would affect the utilization of Portsmouth Regional's existing surgical facilities and that there were substantial questions about whether the project could actually be completed for less than the threshold amount.

The board granted Portsmouth Regional intervenor status and held a hearing to determine whether certain equipment and real estate costs should be considered in determining whether the cost of the project exceeded the statutory threshold amount set forth in RSA 151-C:13, I(f). The board determined that the cost did not exceed the statutory threshold amount of $1,090,617 ($1,000,000 plus inflation) and, therefore, did not require a CON. *See* RSA 151-C:13, I(f). The board denied Portsmouth Regional's motion for reconsideration and this appeal followed.

On appeal, Portsmouth Regional asserts that the board erred in determining the cost of the project because it failed to include the value of leased real estate.

We turn first to the applicable standard of review. Appeals under RSA chapter 151-C are governed by the provisions of RSA chapter 541 (1997). *See* RSA 151-C:10, II. We will affirm the board's decision unless we find it to be "arbitrary or capricious or not made in compliance with applicable law." RSA 151-C:10, III; *see also* RSA 541:13 (1996); *Appeal of N.E. Heart Inst.*, 144 N.H. 546, 547-48 (1999). Whether the board erroneously excluded the cost of real estate in its determination that the project was not subject to review is an issue of law that we review *de novo. See* RSA 541:13; *Appeal of Inter-Lakes Sch. Bd.*, 147 N.H. 28, 31 (2001).

RSA 151-C:13, I(f) excludes "[f]acilities and services which are intended to serve only outpatients and which do not require construction of greater than the appropriate threshold level, as determined under RSA 151-C:5, II(a) or RSA 151-C:5, II(f) . . . ." As the project involved the development of an ambulatory surgical center, the appropriate threshold level is contained in RSA 151-C:5, II(f), which covers the "construction, development, expansion, renovation, or alteration of any . . . ambulatory surgical facility . . . requiring a *capital expenditure* of more than $1,000,000 [adjusted annually for inflation]." (Emphasis added). *Cf.* RSA 151-C:5, II(a) (threshold of $1,500,000, plus inflation, for acute health care facilities). In 1999, the inflation-adjusted threshold for an ambulatory center was $1,090,617.

Portsmouth Regional contends that the board should have included the value of real estate being leased by Northeast Surgical in determining whether the capital expenditures required for the project exceeded $1,090,617. Portsmouth Regional asserts that RSA 151-C:5, II(f) requires the board to use the statutory definition of "capital expenditure," which is:

> [A]n expenditure which, under generally accepted accounting principles consistently applied, is not properly chargeable as an expense of operation or maintenance, and includes acquisition by purchase, by transfer, or by lease or comparable arrangement, or through donation, if the expenditure would have been considered a capital expenditure if acquisition had been by purchase.

RSA 151-C:2, VI. Using this definition, Portsmouth Regional contends that "even though an asset might be donated or rented to the developer of an ambulatory surgical facility and not appear as a capital expense on the developer's balance sheet, it would still be a 'capital expenditure' under the CON law."

In response, Northeast Surgical first contends that in determining whether a project is exempt, it is only necessary for the board to determine whether the *construction costs* exceed $1,090,617 — and that

using the definition of "capital expenditure" would impermissibly broaden the types of activities that may be considered under the statute. Second, Northeast Surgical contends that even assuming *all* capital expenditures are included, the lease at issue is an operating cost and not a capital expenditure.

■ We first resolve whether the board may consider only construction costs — and not all capital expenditures — in determining whether a project is excluded from regulation under the statute. Although Portsmouth Regional contends that under RSA 151-C:5, II(f), the board must consider all capital costs in determining whether it is necessary to develop standards for a new institutional health service, we disagree. In determining which facilities are exempt, the board need apply only RSA 151-C:13. Once the board determines that a project is exempt under one of the provisions of RSA 151-C:13, the project is not subject to review under the other provisions of RSA chapter 151-C and it becomes unnecessary to determine whether the board would normally be required to develop standards for the institution under RSA 151-C:5, II.

RSA 151-C:13, I(f) explicitly states that outpatient facilities "which do not require *construction* of greater than the appropriate threshold level" are excluded from RSA chapter 151-C. It is clear from the statute's plain language that the only consideration in determining whether a facility is excluded from RSA chapter 151-C is whether the construction costs exceed the statutory threshold level. *See id.* The term "construction" is defined as:

> [A]ctual commencement of any construction or fabrication of any new building, or addition to any existing facility, or any expenditure of more than the appropriate threshold level, as determined under RSA 151-C:5, II(a) or RSA 151-C:5, II(f), relating to the alteration, remodeling, renovation, modernization, improvement, relocation, repair, or replacement of a health care facility or health maintenance organization, including expenditures necessary for compliance with life and health safety codes.

RSA 151-C:2, XII. Because Northeast Surgical renovated a portion of an existing building and constructed an addition, consideration of whether the project exceeded the statutory threshold is limited to a review of the costs associated with the "actual commencement of any construction" and the "addition to any existing facility." These costs would not include the cost of acquiring land and existing buildings, but rather costs related to construction such as labor costs, materials and fixed equipment.

Portsmouth Regional argues that all capital expenditures made by an entity must be calculated for purposes of determining whether a project is exempt under RSA 151-C:13, I(f). We conclude that this interpretation is overbroad. The definition of "capital expenditure" includes costs that extend beyond mere construction costs. Had the legislature intended for the board to consider all capital expenditures, it would not have used the term "construction" in RSA 151-C:13, I(f). *See Town of Wolfeboro v. Smith*, 131 N.H. 449, 453 (1989) ("We assume that all words in a statute were meant to be given meaning in the interpretation of a statute.").

Our interpretation of RSA 151-C:13, I(f) is supported by the statute's legislative history. Prior to being amended in 1991, RSA 151-C:13, I(f) (1990) provided an exclusion for "[f]acilities and services which are intended to serve only outpatients and which do not require construction of greater than $1,000,000 or new equipment costing more than $400,000." It is clear from the plain language of this statute that the board could only consider whether *construction costs* exceeded $1,000,000. The statute was amended because acute care hospitals were successful in increasing the threshold level for their expenditures from $1,000,000 to $1,500,000 and because the legislature determined that each year, the threshold levels would be adjusted for inflation. *See* Laws 1991, 333:5, 6. Because two different amounts were at issue, the legislature amended the exclusion provision to account for the different types of outpatient services projects. *See* Laws 1991, 333:13. The legislature thus substituted "the appropriate threshold level, as determined under RSA 151-C:5, II(a) or RSA 151-C:5, II(f)" for "$1,000,000." *Id.* There is no evidence that in making this change, the legislature intended that the defined term "construction" would no longer be the relevant test or that "capital expenditures" would be the new test for determining whether a project is exempt.

■ Because we conclude that the acquisition of real estate in this case is not a construction cost under RSA 151-C:13, I(f), we need not determine whether the operating lease was a "capital expenditure." We also need not determine whether equipment costs were improperly considered as part of the project's construction threshold. Even if the board erroneously included equipment costs in determining whether the project was exempt under RSA 151-C:13, I(f), any error was harmless because the project's

combined equipment and construction costs fell below the threshold of $1,090,617. *See Red Hill Outing Club v. Hammond*, 143 N.H. 284, 289 (1998).

*Affirmed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred.