Bureau of Securities Regulation
No. 2001-704

APPEAL OF VIJAY BASANI & a.

(New Hampshire Bureau of Securities Regulation)

Argued: November 6, 2002
Opinion Issued: March 14, 2003

*Philip T. McLaughlin*, attorney general (*Laura E. B. Lombardi*, attorney, on the brief and orally), for the State.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Alexander J. Walker, Jr.* and *Daniel E. Will* on the brief, and *Mr. Walker* orally), for the respondents.

BRODERICK, J. The respondents, Vijay Basani; WebManage Technologies, Inc., New Hampshire (Web); WebManage Technologies, Inc., Delaware (WebManage); and Network Appliance, Inc. (NetApp), appeal from the final order of the director of the New Hampshire Bureau of Securities Regulation (bureau) finding them in violation of the registration and issuer-dealer requirements of the New Hampshire Securities Act. *See* RSA ch. 421-B (1998 & Supp. 2002). We affirm.

The following facts are not disputed. In 1996, Basani, his brother and a third party founded Web, a New Hampshire corporation with a principal place of business in Nashua. WebManage was incorporated in 1999 and became the successor-by-merger to Web. It maintained the corporate offices in New Hampshire until September of that year, when it relocated to Massachusetts. In November 2000, WebManage merged with NetApp. At all relevant times, Basani served as president and CEO of Web and WebManage.

Between 1996 and 1999, Web and WebManage made thirty-six sales of common and preferred stock from corporate headquarters in Nashua to outside investors. At the time the sales were made, neither Web nor WebManage was a licensed issuer-dealer in New Hampshire and the stock was not registered, exempt from registration or a federal covered security as defined by RSA chapter 421-B. In addition, Basani, who was a former registered stockbroker, was not licensed to sell securities in New Hampshire at the time the distributions were made. In fact, he was under suspension by the New York Stock Exchange and the National Association of Securities Dealers (NASD).

Eighteen of the stock sales occurred in 1999 and, of those, only eight remain relevant to this appeal. In November 2000, corporate counsel for WebManage, in the course of preparing his client for merger with NetApp, discovered certain failures by Web and WebManage to comply with the licensing and registration requirements of RSA chapter 421-B. WebManage then self-reported to the bureau.

The bureau examined all of the stock distributions listed on the corporation's stockholders' transaction list, removed those it determined were exempt and then calculated the number of remaining sales that would qualify for "isolated sales exemptions." Pursuant to RSA 421-B:17, II(a) (1998) (amended 2001), the bureau allowed WebManage five exemptions for isolated sales for each twelve-month period between September 18, 1996, and August 26, 1999, and charged the additional transactions as unlawful sales of securities in violation of RSA 421-B:11 (Supp. 2002).

The bureau staff filed a petition for relief against WebManage on February 23, 2001, and amended the petition in March to also seek relief against Basani and NetApp. A further amendment was filed in August 2001 which alleged additional violations. The respondents were ordered to cease and desist their stock sale activity and to show cause why administrative penalties should not be imposed against them.

A merits hearing was subsequently held before the director. The facts surrounding the stock sales were not disputed and it was admitted that Web and WebManage were not licensed issuer-dealers in New Hampshire and that the stock was not registered here. The only issues before the director were whether the challenged stock transactions were exempt under RSA 421-B:17, II(a) and, if not, what penalties should be imposed. WebManage and Basani requested the director to retroactively apply recent amendments to the Securities Act giving him discretion to increase the number of isolated sales exemptions allowed by law and to grant an exemption from the registration requirement of RSA 421-B:6, I (Supp. 2002).

In September 2001, following the hearing, the director issued a final order which made the cease and desist order permanent, required the respondents to pay a fine of ten thousand dollars and prohibited Basani from licensure in any capacity by the bureau for a period of two years. The director further ruled that "retroactive exemption from the registration and issuer dealer requirements of the New Hampshire Securities Act [was] not proper in this matter." The respondents filed a motion for reconsideration, which was denied. This appeal followed.

The respondents argue that: (1) the director unjustly and unreasonably failed to exercise his discretion to exempt the challenged transactions from the licensing and registration provisions of RSA 421-B:6 and :11; and (2) the bureau unjustly and unreasonably singled out Basani for prosecution.

We will not set aside an agency's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable. *Appeal of Fred Fuller Oil Co.*, 144 N.H. 607, 609 (2000). The agency's findings of fact are deemed *prima facie* lawful and

reasonable. *Id.*; *see* RSA 541:13 (1997). This presumption may be overcome only by a showing that there was no evidence from which the agency could conclude as it did. *Fred Fuller Oil Co.*, 144 N.H. at 609.

The respondents first argue that the director unjustly and unreasonably failed to exercise his discretion to exempt the unlawful stock sales from the licensing and registration provisions of RSA 421-B:6 and :11. Implicitly, they suggest that the director should have retroactively applied a 2001 amendment to RSA 421-B:17, II(a) to the present case. We disagree.

We first examine the applicable statutory scheme. RSA 421-B:6, I, makes it "unlawful for any person to transact business in [New Hampshire] as a broker-dealer, issuer-dealer, investment advisor, or agent unless such person is licensed under this chapter." There is no dispute that, at the time of the stock sales at issue, the respondents were not licensed to deal in securities in this State. RSA 421-B:11, I, provides that "[i]t is unlawful for any person to offer or sell any security in [New Hampshire] unless it is registered [here], the security or transaction is exempted under RSA 421-B:17, or it is a federal covered security . . . ." The respondents do not dispute that the stock at issue was not registered, exempt from registration or a federal covered security. Finally, RSA 421-B:17, II(a) exempts from RSA 421-B:11 "[a]ny isolated sales, whether or not effected through a broker-dealer, provided that no person shall make more than 5 sales, in total, of securities of the same issuer, in all jurisdictions combined . . . during any period of 12 consecutive months." The stock transactions at issue exceeded the exemption of five sales and thus were not exempt under this provision.

In 2001, the legislature amended RSA 421-B:17, II(a) to allow the secretary of state or his designee, in this case the director, on a case-by-case basis to increase the number of persons to whom sales may be made under the isolated sales exemption. *See* RSA 421-B:17, II(a) (Supp. 2002). Thus, the statute, as amended, permits the director to exempt isolated sales in excess of five, if the transactions meet the remaining conditions imposed on such sales.

The legislature also amended RSA 421-B:6 in 2001, adding the following paragraph:

> VII-a. The secretary of state shall have the authority to issue orders exempting otherwise non-exempt sales of securities from the issuer-dealer and issuer-dealer agent licensing requirements of RSA 421-B:6 if the secretary of state determines:
>
> (a) That all or substantially all of the *proposed* sales of securities fall within one or more of the exemptions set forth in:

(1) RSA 421-B:17; or

(2) RSA 421-B:6; and

(b) That granting the exemption will be consistent with the purposes fairly intended by the policy and provisions of this title.

RSA 421-B:6, VII-a (Supp. 2002) (emphasis added). Assuming, without deciding, that retroactive application of the registration and licensing amendments should have been applied in this case, the language of the amended statutes, read as a whole, makes it clear that the director only had discretion to increase the exemption from registration for isolated sales and exempt licensure under RSA 421-B:6 for prospective sales. It is apparent that the legislature intended persons seeking discretionary exemptions from licensure and registration for additional "isolated sales" to request approval from the director prior to making the intended sales. This comports with the purpose of securities registration laws, which is "to prevent fraud before it happens." *A.S. Goldmen & Co. v. New Jersey Bureau of Sec.*, 163 F.3d 780, 788 (3d Cir.), *cert. denied*, 528 U.S. 868 (1999).

Because the sales at issue took place before the statutory amendments were enacted, the respondents obviously did not secure advance approval for the sales. Accordingly, the director was correct in denying the requested post-sale exemptions.

The respondents next argue that the bureau unjustly and unreasonably singled out Basani for prosecution despite evidence that others engaged in similar conduct; namely, other founders of WebManage. They further argue that Basani was unfairly prejudiced by the improper admission of evidence relating to his prior suspension by the NASD.

Selective prosecution is not, in and of itself, a constitutional violation. *State v. Monahan*, 125 N.H. 17, 26 (1984). Rather, the respondents must show that (1) others similarly situated have not generally been prosecuted, and (2) the prosecution was based upon clearly impermissible discriminatory grounds such as race, religion or exercise of First Amendment rights. *Id.* Without evidence that the State has based its prosecution of an individual upon an unjust standard, we will not assume that prosecution resulted from intentional and purposeful discrimination in enforcement of the law. *Id.* The bare assertion that others who violated the law in a similar manner were not prosecuted is insufficient to establish selective prosecution. *Id.* Here, the respondents have not alleged any facts that would support a conclusion that the bureau engaged in impermissible selective prosecution.

264

■We also find that it was not improper for the bureau to consider Basani's NASD suspension. RSA 421-B:26-a, XX (1998) states that "[a]dministrative hearings shall not be bound by common law or statutory rules of evidence, nor by technical or formal rules of procedure. All relevant, material, and reliable evidence shall be admissible." The agency, like a trial judge, has broad discretion over the conduct of its proceedings, including its hearings. *See Appeal of Morin*, 140 N.H. 515, 517 (1995).

Here, the evidence of Basani's prior suspension for unauthorized trading bears directly on the question of his knowledge of securities law and his actions while under suspension. The director found that the unlawful stock sales took place while Basani, a former registered stockbroker, was under suspension by NASD. It was reasonable for the director to conclude that, as an individual familiar with securities transactions, Basani knew or should have known to review New Hampshire law for specific rules and regulations pertaining to the sale of securities prior to engaging in such transactions.

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.