Board of Veterinary Medicine
No. 2003-103

## APPEAL OF ROLAND E. HUSTON, JR., D.V.M.
### (New Hampshire Board of Veterinary Medicine)

Argued: October 9, 2003
Opinion Issued: December 29, 2003

*Smith-Weiss, Shepard and Durmer, P.C.*, of Nashua (*Robert M. Shepard* on the brief and orally), for the petitioner.

*Peter W. Heed*, attorney general (*Wynn E. Arnold*, senior assistant attorney general, on the brief and orally), for the State.

BROCK, C.J. The petitioner, Roland E. Huston, Jr., D.V.M., appeals the order of the New Hampshire Board of Veterinary Medicine (board) suspending his license to practice veterinary medicine and imposing a $9,000 fine. The petitioner challenges: (1) the board's denial of his motion to recuse board counsel; and (2) hearing counsel's failure to produce all potentially exculpatory evidence before the hearing. In addition, he argues that six of the board's findings were unjust and unreasonable. At oral argument, he conceded that his argument that the board lacked authority to order him to attend counseling was moot. We affirm.

*I. Background*

The petitioner owns State Line Veterinary Hospital (State Line) in Nashua. He was the subject of a board investigation in 2001, precipitated by the board's receipt of complaints about him. In 2002, the board held a hearing at which it determined that the petitioner violated the standards of conduct under the New Hampshire Veterinary Practice Act, RSA chapter 332, as well as the board's administrative rules and the American Veterinary Medicine Association (AVMA) code of ethics by, among other things: (1) failing to maintain proper records with respect to two animals, Sergeant Dunn and Oscar Bowen (findings 9A and 9E); (2) taking unnecessary X rays of Sergeant Dunn (finding 9D); failing to treat Sergeant Dunn properly (finding 9C); (3) using foul language to refer to his employees (finding 9H); and (4) knowingly allowing John A. Settle, Jr., a fugitive from justice, to live and work at State Line from 1998 to 2001 (finding 9O).

In addition to fining the petitioner $9,000, the board suspended his license for two years and imposed a number of conditions. The board ordered that eighteen months of his two-year suspension would be deferred, however, if he met various conditions.

*II. Standard of Review*

RSA chapter 541 governs our review of board decisions. RSA 332-B:16, VII (Supp. 2002). Under RSA 541:13 (1997), we will not set aside the board's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. *See Appeal of Basani*, 149 N.H. 259, 261 (2003). The board's findings of fact are presumed *prima facie* lawful and reasonable. *See id.* at 261-62; *see also* RSA 541:13. This presumption may be overcome only by a showing that there was no evidence from which the board could conclude as it did. *See Appeal of Basani*, 149 N.H. at 262. We review the board's rulings on issues of law *de novo*. *See Appeal of Portsmouth Regional Hosp.*, 148 N.H. 55, 57 (2002).

## III. Discussion

### A. Motion to Recuse

The petitioner argues that his State and federal constitutional rights were violated because two members of the attorney general's office prosecuted the case, while a third served as board counsel. *See* N.H. CONST. pt. I, arts. 15, 35; U.S. CONST. amend. XIV. The petitioner asserts his claims under the State and Federal Due Process Clauses, *see* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV, and Part I, Article 35 of the State Constitution, which also guarantees the right to an impartial jurist.

We addressed nearly identical claims in *Appeal of Trotzer*, 143 N.H. 64 (1998). In *Trotzer*, the petitioner was a psychologist whose certificate had been suspended by the New Hampshire Board of Examiners of Psychology and Mental Health Practice for professional misconduct. *Id.* at 65. He argued that his State and federal due process rights were violated because the department of justice had failed to "construct or maintain adequate walls of division between the assistant attorneys general who served as prosecutor and counsel to the board." *Id.* at 66. He asserted that due process required "visible walls of division . . . to eliminate the threat or appearance of bias" when investigative, prosecutorial and adjudicative functions are contained within a single agency. *Id.* at 67.

We ruled that while the appearance of bias might establish a due process violation when one person "commingle[s] investigative, accusative, and adjudicative functions," when these functions are combined within one agency, actual bias must be shown. *Id.*; *see also Withrow v. Larkin*, 421 U.S. 35, 52 (1975). We held that, in the absence of actual bias, "it is permissible for one assistant attorney general to represent the board in its quasi-judicial capacity and another assistant attorney general to prosecute the case before the board." *Trotzer*, 143 N.H. at 68.

The petitioner concedes there was no actual bias in this case. Thus, under *Trotzer*, his State and federal due process claims fail. *See id.* As Part I, Article 35 of the State Constitution affords no additional protection, his claim under that provision also fails. *See Appeal of Campaign for Ratepayers Rights*, 133 N.H. 480, 484 (1990).

The petitioner argues, however, that we should overrule *Trotzer* because it creates an ethical double standard for public and private attorneys, permitting public attorneys to do what private attorneys cannot. "In this day and age, when the reputation of the legal profession is constantly being called into question," he contends, we should no longer sanction this double standard.

We decline the petitioner's invitation to overrule *Trotzer. See Jacobs v. Director, N.H. Div. of Motor Vehicles,* 149 N.H. 502, 504-05 (2003).

The petitioner's argument rests upon a false premise. He assumes that the ethical obligations of private and public attorneys are identical in all circumstances. They are not. "Under various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers" differ from those of private attorneys. N.H. R. PROF. CONDUCT Scope. Accordingly, public and private attorneys have different ethical obligations in some circumstances. *See id.* Lawyers under the supervision of the attorney general, for instance, "may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients." *Id.* The rules of professional conduct do not abrogate this authority. *Id.*

By our ruling, we do not intend to imply that the ethical obligations of public and private attorneys are different in all circumstances. We are not called upon in this opinion to discuss the circumstances under which public and private attorneys are subject to the same ethical obligations.

*B. Exculpatory Evidence*

The petitioner argues that hearing counsel's failure to produce potentially exculpatory evidence for his review before the hearing violated the board's discovery order and his statutory and constitutional rights to a fair hearing. *See* RSA 541-A:31, IV (1997); RSA 332-B:16 (Supp. 2002); N.H. CONST. pt. I, art. 15.

The evidence about which the petitioner complains was relevant to the allegation that he knowingly allowed Settle, a fugitive from justice, to live and work at State Line from 1998 to 2001. The evidence consisted of: (1) a document showing that his business manager, Carl Scheidegg, paid a portion of Settle's bail; and (2) documents that the petitioner discovered after the hearing demonstrating that in 1994, the court ordered bail returned to Scheidegg, in part, because a mittimus had issued for Settle's arrest.

■ With respect to the document showing that Scheidegg paid a portion of Settle's bail, we agree with the State that the petitioner did not preserve his objections to hearing counsel's use of and failure to disclose this document. The petitioner did not raise these objections until his motion for rehearing. This was insufficient to preserve them for our review. *See Appeal of Campaign for Ratepayers Rights,* 133 N.H. at 484; *see also* RSA 541:3, :4 (1997).

■ With respect to the documents showing that bail was returned to Scheidegg in 1994, in part, because a mittimus had issued for Settle's arrest, we hold that these documents are *inculpatory*, not exculpatory. Thus, even if we were to agree with the petitioner that hearing counsel had a duty under the board's discovery order, the New Hampshire Administrative Procedure Act or the New Hampshire Constitution to produce exculpatory evidence, hearing counsel had no duty to produce these documents. These documents showed that in 1994, four years before Settle came to live at State Line, Scheidegg, and by inference, the petitioner, knew that there was a mittimus for Settle's arrest. These documents were not favorable to the petitioner.

They were also cumulative of documents hearing counsel produced before the hearing. The produced documents included the superior court's order granting the State's motion for mittimus to issue as well as the return from superior court showing that mittimus was issued on September 6, 1990.

### C. Findings and Rulings

■ We must affirm the board's factual findings unless we determine that there was *no* evidence from which the board could conclude as it did. *See Appeal of Basani,* 149 N.H. at 262. Having reviewed the record carefully, we conclude that there was sufficient evidence from which the board could have found as it did. *See id.*

The petitioner first challenges finding 9O—that he knowingly permitted Settle, a fugitive from justice, to live at Stateline from 1998 to 2001. He argues that there was no direct evidence that he knew that Settle was a fugitive from justice. In denying the petitioner's motion for rehearing, the board explained that it based this finding, in part, upon its determination that the petitioner was not credible. As the board explained:

> The evidence used to decide [this allegation] was Mr. Settle's behavior, the presence of a previous relationship with Mr. Scheidegg (not the bail), and Dr. Huston's willingness to rehire Mr. Settle, which the Board finds would be unlikely if Dr. Huston believed Mr. Settle had lied to him and lived at his practice as a fugitive for years.

We will not disturb the board's credibility determinations on appeal. Weighing testimony and assessing its credibility are solely the province of the board. *See Appeal of N.H. Dep't of Health and Human Servs.,* 145 N.H. 211, 215 (2000); *Appeal of Armaganian,* 147 N.H. 158, 163 (2001). We conclude that the evidence supports finding 9O.

The petitioner next contests findings 9A and 9E—that the petitioner kept inadequate medical records for Sergeant Dunn and Oscar Bowen, two of the animals in his care. The petitioner concedes that his records did not "completely" comply with applicable regulations and "the letter of the law," but asserts that they were "adequate" for a solo practitioner. The board's findings, however, were supported by the records themselves, the petitioner's testimony, in which he admitted that some of his records were inadequate, and the testimony of Dr. James L. Paine and Dr. Lori E. Gordon.

The petitioner next objects to the board's conclusion that his treatment of Sergeant Dunn was unprofessional and violated the New Hampshire Veterinary Practice Act, applicable regulations, and the AVMA code of ethics (findings 9C and 9D). *See* RSA 332-B:14, II(c), (p) (Supp. 2002); N.H. ADMIN. RULES, Vet 501.02. He does not dispute the factual bases for the board's conclusion. For instance, he does not dispute that he took X rays of the dog after it died or that he gave the dog a rabies vaccine, despite its deteriorating physical condition. He argues instead that his actions were justified. The board was statutorily entitled to use its expertise and specialized knowledge to evaluate whether the petitioner's conduct was unprofessional. *See* RSA 541-A:33, VI (1997); *see also Petition of Grimm*, 138 N.H. 42, 54 (1993).

Finally, the petitioner argues that in finding that he used foul language to refer to his employees, the board "totally disregarded the testimony of Robin Mowry" and that of Dr. Gordon (finding 9H). Faced with conflicting accounts, the board was entitled to credit some witnesses over others. *See Appeal of Hooker*, 142 N.H. 40, 47 (1997); *Barrows v. Boles*, 141 N.H. 382, 396-97 (1996). Numerous witnesses testified that the petitioner used salacious, demeaning and otherwise offensive language with his employees. The board's finding regarding the petitioner's use of foul language was well-supported by the record.

*Affirmed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.