Board of Dental Examiners
No. 2012-532

APPEAL OF DR. KEVIN D. BOULARD, D.M.D.
(New Hampshire Board of Dental Examiners)

Submitted: June 4, 2013
Opinion Issued: August 28, 2013

*Thompson & Bowie, LLP*, of Portland, Maine (*Mark V. Franco* on the brief), for the petitioner.

*Michael A. Delaney*, attorney general (*Anthony I. Blenkinsop*, senior assistant attorney general, on the brief), for the New Hampshire Board of Dental Examiners.

LYNN, J. The petitioner, Dr. Kevin Boulard, D.M.D., appeals an order of the New Hampshire Board of Dental Examiners (Board) finding that he committed professional misconduct and suspending indefinitely his "moderate sedation — unrestricted" permit. We affirm in part and vacate in part.

The record establishes the following pertinent facts. The petitioner, a licensed dentist, obtained a moderate sedation — unrestricted permit from the Board in 2010. A moderate sedation — unrestricted permit allows the permit holder to use anesthesia on patients to perform certain dental procedures. In December 2011, the Board received a complaint from one of the petitioner's former employees. In the complaint, the former employee raised multiple concerns about the petitioner's practice, including that it "was not equipped to handle a sedation emergency." On March 8, 2012, the Board commenced an unannounced investigation of the petitioner's practice, sending one of its own investigators and an investigator from the New Hampshire Department of Justice. Neither investigator was trained in sedation. The investigators found that the petitioner failed to maintain an operable automated external defibrillator (AED) and maintained an emergency medical kit that was incomplete and contained expired medications. On March 16, the Board found that this conduct "involve[d] imminent danger to life, safety, and/or health in cases involving moderate sedation" and ordered an emergency, temporary suspension of the petitioner's permit. *See* RSA 317-A:18-b (2005). On April 2, the Board held a hearing to

determine whether the petitioner committed professional misconduct and, if so, whether to extend the suspension of his moderate sedation — unrestricted permit.

On April 30, at the petitioner's request, the Board commenced a second investigation of the petitioner's practice, this one conducted by the New Hampshire Anesthesia and Sedation Evaluation Committee (Committee). The Committee is a standing committee established by the Board "to ensure that dentists who have a permit to administer general anesthesia and/or sedation" meet the necessary requirements. *See* N.H. ADMIN. RULES, Den 102.01(f)(2), 304.02. The Board appoints the Committee to conduct formal and informal investigations. *See* N.H. ADMIN. RULES, Den 212.03. Unlike the first investigation, which was unannounced, the date and parameters of this second investigation were known to the petitioner several weeks in advance. The Committee consisted of two licensed dentists, each of whom held a sedation permit. The Committee's evaluation gave the petitioner a passing grade for his moderate sedation — unrestricted permit. However, the grade was contingent upon the petitioner acquiring one required medication and one piece of required equipment, both of which were missing, and required certifications for his staff. The Committee also noted that the petitioner's staff was "slow with response [and] required coaching for appropriate response" during simulated emergencies.

On May 7, the Board met to deliberate the results of the April 2 hearing (the Board did not consider the results of the Committee's investigation because it did not receive the Committee's evaluation until May 17). On May 21, the Board issued an order stating that the petitioner committed professional misconduct by: (1) "failing to maintain an operable AED . . . while he was authorized to perform moderate sedation — unrestricted"; (2) "maintaining an emergency medical kit that was missing certain required medications and contained expired medications which are required for moderate sedation — unrestricted"; and (3) "assigning to assistants duties . . . which they were untrained to perform correctly." The Board ruled that this conduct constituted "ignorance, incompetence, or a pattern of behavior inconsistent with the basic skills expected of persons licensed to practice dentistry and who hold [a moderate sedation — unrestricted] permit." *See* RSA 317-A:17, II(d). The Board indefinitely suspended the petitioner's permit until "[a]ll information relative to sedation regarding his facility, equipment, drugs and personnel [was] received and reviewed by the Board" and "[t]he Board complete[d] its on-going investigation of other issues indicated in the information [submitted to the Board by the petitioner's former employee]."

The petitioner subsequently moved for reconsideration and reopening of the record so that the Board could consider the Committee's evaluation. In a June 27 order, the Board upheld the indefinite suspension of the petitioner's permit. After considering the Committee's evaluation, the Board found that the petitioner had committed professional misconduct by "fail[ing] to have medications and adequately trained staff as required for the administration of unrestricted moderate sedation, in violation of RSA 317-A:17, II (d) and (e)." The Board also noted that "[the petitioner's staff] seemed unprepared for an emergency involving a sedated patient during the demonstration drill, even with three weeks to practice and knowing the date and content of the inspection in detail." As a result, the Board ordered that the petitioner's permit remain suspended until "all information related to the [petitioner's] use of moderate sedation is received and reviewed by the Board, including information from other practice issues currently being investigated by the Board." This appeal followed. *See* RSA 317-A:18-a, VI (2005); RSA 541:6 (2007).

Our standard of review for Board decisions is governed by RSA 541:13 (2007). *Appeal of Beyer*, 122 N.H. 934, 938 (1982). We defer to the Board's findings of fact, and we will reverse its decision only if it is erroneous as a matter of law, or if we are satisfied by a clear preponderance of the evidence that its order was unjust or unreasonable. RSA 541:13; *Appeal of Kelly*, 158 N.H. 484, 490 (2009). The Board's findings of fact shall be deemed *"prima facie* lawful and reasonable." RSA 541:13; *Appeal of Trotzer*, 143 N.H. 64, 67 (1998). "This presumption may be overcome only by a showing that there was no evidence from which the [B]oard could conclude as it did." *Appeal of Huston*, 150 N.H. 410, 411 (2003) (quotation omitted).

The Board is responsible for ensuring "the protection of the public health, safety, and welfare" with regards to dentistry. RSA 317-A:1 (2005). It has authority to conduct disciplinary hearings for violations of a moderate sedation — unrestricted permit, *see* RSA 317-A:4(c) (2005), and may suspend or revoke a permit when, after the permit holder is given notice and the opportunity to be heard, it finds evidence that the permit holder engaged in "professional misconduct," *see* RSA 317-A:17, II, III; N.H. ADMIN. RULES, Den 304.02(i). Professional misconduct includes, in pertinent part, "[i]gnorance, incompetence, or a pattern of behavior inconsistent with the basic knowledge and skills expected of persons licensed to practice dentistry or dental hygiene," RSA 317-A:17, II(d), or "[g]ross or repeated negligence in practicing dentistry or dental hygiene," RSA 317-A:17, II(e).

The petitioner first argues that the Board's suspension of his permit is "unjust and unreasonable" because there is insufficient evidence in the record to support the Board's determination that he committed professional misconduct. We disagree.

██ We first reject the petitioner's argument that the Board "refused to properly credit" the Committee's evaluation. In its June 27 order, the Board referenced the Committee's findings that the petitioner failed to have a required medication and adequately trained staff. These findings constitute a reasonable basis for the Board to find that the petitioner committed professional misconduct. Even though the Committee awarded the petitioner a passing grade following its investigation, the Board, as the decision-maker, is under no obligation to adopt the Committee's recommendations. See Appeal of Dell, 140 N.H. 484, 493 (1995) ("While [a hearing officer's] findings and conclusions are entitled to weight, they may be accepted, rejected, or modified by the board." (citations omitted)); N.H. ADMIN. RULES, Den 212.04(c) ("[A]n investigator designated by the board shall . . . make a recommendation as to whether further board action should be taken on the allegations in question." (emphasis added)); cf. Petition of Grimm, 138 N.H. 42, 54 (1993) ("[T]he board may reject uncontradicted opinion testimony that its own expertise renders unpersuasive."). There is no evidence that the Board did not "give proper consideration to all the evidence when making its findings." Appeal of Public Serv. Co. of N.H., 124 N.H. 479, 484 (1984).

██ In a related argument, the petitioner contends that the Board's reading of the Committee's evaluation constitutes evidence of bias. We disagree. When the Board serves in an adjudicatory capacity, it is presumed to be "of conscience and capable of reaching a just and fair result." Appeal of Grimm, 141 N.H. 719, 721 (1997) (quotations omitted). The Board's decision to reject the Committee's passing grade does not establish that it entertained ill-will towards the petitioner, or unalterably prejudged the facts of the case against him. See Dell, 140 N.H. at 497.

██ The petitioner next argues that the investigators who conducted the first investigation were unqualified. See N.H. ADMIN. RULES, Den 304.02(g)(3). Assuming, without deciding, that the investigators who conducted the first investigation were unqualified to evaluate the petitioner's moderate sedation — unrestricted practice, it is uncontested that the Committee, which conducted the second investigation, consisted of qualified investigators. In upholding the indefinite suspension of the petitioner's permit, the record establishes that the board relied exclusively upon the Committee's findings, not the findings of the first investigators.

██ The petitioner further argues that the Board lacked expertise to evaluate the petitioner's conduct and that expert testimony was required to establish the applicable standard of care. Again, we disagree. An administrative board has "expertise and specialized knowledge to evaluate whether [a party's] conduct was unprofessional." *Huston*, 150 N.H. at 415; *see* RSA 541-A:33, VI (2007). In this case, we disagree that expert testimony was required to establish the standard of ordinary care because not all of the Board members were trained in sedation. "Like other administrative bodies whose jurisdiction is limited to particular types of cases, the standard of ordinary care is within the competence of the board, and for this reason, expert testimony is not always necessary." *Beyer*, 122 N.H. at 939-40; *see* RSA 317-A:2 (2005) ("[The Board of Dental Examiners] consists of 9 members; including 6 dentists, 2 dental hygienists, and one public member . . . ."). We conclude that the petitioner's violations — failing to have a required medication and adequately trained staff — are not so complex as to be outside the competence of the Board to decide without the aid of expert testimony. *See Beyer*, 122 N.H. at 939-40; *cf. Durocher v. Rochester Equine Clinic*, 137 N.H. 532, 534 (1993) ("Where the matter is regarded as within the common knowledge of laymen . . . it is often held that the jury may infer negligence without the aid of any expert." (quotation omitted)).

██ Finally, the petitioner argues the Board's indefinite suspension of his permit constitutes an abuse of discretion. On this point, we agree in part. "We will set aside an administrative sanction only if it is so harsh or excessive as to be unreasonable or to constitute an abuse of discretion." *Appeal of Morgan*, 144 N.H. 44, 56 (1999) (quotation omitted). "Recognizing that appropriate sanctions are necessarily tailored to the facts of each case, we will substitute our judgment for that of the agency only in exceptional cases." *Id.* After reviewing the record, we conclude that the Committee's findings support the Board's determination that the petitioner violated RSA 317-A:17, II(d) and (e). Therefore, we hold that the Board's imposition of an indefinite suspension *for this misconduct* was not so harsh or excessive as to be unreasonable. *See id.* As to this aspect of the Board's June 27 order, we interpret it to permit the petitioner to apply for reinstatement of his permit after he corrects the violations found by the Board and demonstrates that he is in compliance with the requirements for holding a moderate sedation — unrestricted permit.

██ However, in addition to ordering that the petitioner's permit remain suspended until he meets the above conditions, the Board also ordered that the petitioner's permit would not be reinstated until the Board had received and reviewed "information from other practice issues currently being

investigated by the Board." We agree with the petitioner that this aspect of the Board's order cannot be upheld. The Board has the authority to conduct further investigations of the petitioner's professional practice. *See* RSA 317-A:4, I(d). However, the mere fact that it is conducting other investigations of the petitioner's practice does not, without more, justify the continued suspension of his permit. *See* RSA 317-A:17, II (providing that the Board may suspend a license after providing the licensee notice and the opportunity to be heard); RSA 317-A:18-b (providing that the Board may suspend a license for up to sixty days without a hearing in cases involving "imminent danger to life or health"). We therefore vacate this part of the Board's order.

In light of the above, we find it unnecessary to address the petitioner's argument that the Board violated his constitutional right to due process because its orders failed to provide clear notice of what he must do to reinstate his permit. *See State v. Berrocales*, 141 N.H. 262, 264 (1996) (reciting our long-standing policy to decide constitutional questions only when absolutely necessary).

> *Affirmed in part; and vacated in part.*

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.