NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Board of Veterinary Medicine
No. 2013-192


IN THE MATTER OF R. ERIC BLOOMFIELD, DVM
(New Hampshire Board of Veterinary Medicine)

Argued:  February 20, 2014
Opinion Issued:  July 11, 2014


Steiner Law Office, PLLC, of Concord (R. James Steiner on the brief and orally), for the respondent.


Joseph A. Foster, attorney general (Francis C. Fredericks, Jr., attorney, on the brief and orally), for the New Hampshire Board of Veterinary Medicine.


BASSETT, J.  The respondent, R. Eric Bloomfield, DVM, appeals a decision of the New Hampshire Board of Veterinary Medicine (Board) in which it reprimanded the respondent based upon its findings that he failed to do a physical examination of a puppy prior to demonstrating a restraint technique, that his restraint of the puppy was excessive, and that he failed to respect the opinion of the puppy's owners.  We affirm.

The Board found or the record establishes the following pertinent facts. On August 6, 2007, a couple took their male five-month old Shih Tzu puppy, Toby, and two other puppies to see the respondent, a licensed veterinarian, for routine vaccination and de-worming.  The respondent asked the couple whether they had any concerns about Toby's behavior.  They responded that

they did not. The respondent then inquired as to which puppy was male, picked Toby up, and administered an oral de-wormer. The respondent asked whether they had experienced any dominance issues with Toby. The couple answered that they had not.

The respondent determined that Toby was "dominant" and proceeded to demonstrate a dominance-submission technique, which included picking Toby up by the scruff of his neck and pinching his snout. Toby then began to urinate. The respondent restrained Toby on the examination table. Toby defecated, struggled briefly, lay still, and then began bleeding from his mouth. Toby died later that day. A necropsy revealed the cause of death to be a non-cardiogenic pulmonary edema (NPE).

In May 2010, the couple filed a formal complaint against the respondent regarding his treatment of Toby. Prior to the hearing, the respondent filed a motion to dismiss, arguing, among other things, that there were no grounds to support the allegations of improper treatment because, at the time of the incident, it was "not known sufficiently in literature" that Shih Tzus had sensitivity to NPE based upon minimal treatment such as muzzling. The Board denied the motion.

After a one-day hearing, the Board found that the respondent did not engage in misconduct as defined by RSA 332-B:14, II(d) (2011) (defining misconduct as "[u]nfitness or incompetency to practice the profession") and that his actions did not cause the death of Toby. Nonetheless, the Board found that the respondent "failed to respect the opinion of the owners and proceeded to demonstrate dominance submission techniques." In addition, it found that "there is no evidence of an exam prior to the demonstration." Finally, it found that "the restraint was excessive, especially given the breed." Therefore, the Board concluded that the respondent's behavior constituted misconduct under RSA 332-B:14, II(c) (2011) (defining misconduct as "unprofessional conduct"), and it reprimanded him.

The respondent moved for reconsideration, arguing that the Board had failed to adopt rules defining "unprofessional conduct," as used in RSA 332-B:14, II(c), and, therefore, the statute was impermissibly vague and violated his right to due process. He also argued that, because the Board did not require expert testimony on the standard of care, its "decision must be vacated for failing to have sufficient evidence to sustain the finding imposed." Finally, he contended that the Board overlooked or misapprehended facts that were inconsistent with its ultimate decision. The hearing counsel objected to the motion, arguing that New Hampshire Administrative Rules, Part Vet 501, which requires veterinarians to comply with the Principles of Veterinary Medical Ethics of the American Veterinary Medical Association, clearly articulated the

standards underlying the Board's decision. The Board denied the motion. This appeal followed.

On appeal, the respondent argues that the evidence does not support the Board's finding that he failed to do a physical examination of the puppy prior to demonstrating a restraint technique, and that his restraint of the puppy "was excessive, especially given the breed." He also argues that RSA 332-B:14, II(c) is "impermissibly vague," and, therefore, violates his procedural due process rights. Finally, he contends that the Board erred by not requiring expert testimony on the standard of care. We address these arguments in turn.

"RSA chapter 541 governs our review of board decisions." Appeal of Huston, 150 N.H. 410, 411 (2003). Under RSA 541:13 (2007), "we will not set aside the board's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable." Id. "The board's findings of fact are presumed prima facie lawful and reasonable." Id. In reviewing the Board's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but rather, to determine whether the findings are supported by competent evidence in the record. See Appeal of Phillips, 165 N.H. 226, 235 (2013). We review the board's rulings on issues of law de novo. Appeal of Huston, 150 N.H. at 411.

I. Factual Findings

The respondent first argues that the evidence does not support the Board's finding that "the restraint was excessive, especially given the breed" because: (1) Shih Tzus' particular susceptibility to restraint was not generally understood in veterinary practice in 2007; and (2) the sole evidence that the respondent's actions were excessive was the alleged link between his restraint of Toby and Toby's death — a causal relationship that the Board specifically rejected. The respondent also contends that the veterinary record clearly demonstrates that he performed a preliminary physical examination of the puppy prior to the demonstration.

We conclude that the Board had evidence before it that the respondent's restraint "was excessive, especially given the breed." The respondent testified that he continued to perform the restraint as Toby urinated and defecated. Additionally, in response to a question as to whether the respondent's restraint was excessive, the investigator, a veterinarian whom the Board assigned to investigate the case, stated, "Well, yeah . . . [t]o . . . restrain a puppy to the point where it's urinating and defecating and continuing to restrain it through the whole episode, I would consider excessive for any puppy." The Board also heard testimony elaborating on a 1995 article that was admitted into evidence, which referred to the tendency of bulldogs to develop airway obstruction. Specifically, witnesses agreed that Shih Tzus, like bulldogs, have small nostrils,

3

small tracheas, and redundant soft tissue, and, therefore, that "it doesn't take much to tip [Shih Tzus] over the edge in breathing issues."

There was also evidence that the respondent did not do a preliminary physical examination prior to the demonstration. The couple testified that the respondent gave Toby de-wormer medication and demonstrated the dominance-submission techniques without first examining or interacting with Toby. In contrast, the respondent testified that he did perform a physical examination. Whether the respondent performed an initial examination was an issue of credibility for the Board. "We will not disturb the board's credibility determinations on appeal. Weighing testimony and assessing its credibility are solely the province of the board." Appeal of Huston, 150 N.H. at 414. Accordingly, we defer to the Board's findings.

Therefore, we conclude that the respondent has not met his burden and that there was competent evidence to support the Board's findings that: (1) the respondent's restraint was "excessive, especially given the breed"; and (2) "there is no evidence of an exam prior to the demonstration." See Appeal of Phillips, 165 N.H. at 235.

II. Notice and Due Process

The respondent next argues that RSA 332-B:14, II(c) violates his constitutional right to due process because the statute defines the "misconduct" necessary to support disciplinary proceedings "by simply restating the same term, noting it as '[a]ny unprofessional conduct.'" He contends that no rules specify conduct that rises to the level of "unprofessional conduct," and, therefore, that the statute is unconstitutionally vague. The Board responds that "unprofessional conduct" does not require further clarification, and that, in any event, the Board did adopt specific rules pertaining to such conduct. We agree with the Board.

We consider the respondent's argument under only the United States Constitution because he does not specifically invoke a provision of the New Hampshire Constitution in his brief. See In the Matter of Kurowski & Kurowski, 161 N.H. 578, 588 (2011). The Fourteenth Amendment's Due Process Clause "requires that statutes or regulations be sufficiently specific to provide fair notice of what they proscribe." Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42, 50 (1st Cir. 2003) (quotation omitted). "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." Maynard v. Cartwright, 486 U.S. 356, 361 (1988). "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." Id.

4

RSA 332-B:14, II(c) states:

> II. Misconduct sufficient to support disciplinary proceedings under this section shall include:
>
> . . .
>
> (c) Any unprofessional conduct, or dishonorable conduct unworthy of, and affecting the practice of, the profession;
>
> . . . .

The Board relies upon Smith v. New Hampshire Board of Examiners of Psychologists, 138 N.H. 548 (1994), to argue that the language in RSA 332-B:14, II(c) does not violate the respondent's right to due process. In Smith, we addressed the similar issue of whether the term "unprofessional conduct," as used in the mental health practice chapter, was sufficiently specific to support disciplinary charges, even in the absence of supporting regulations. See Smith, 138 N.H. at 548. The plaintiffs, who were before the board of examiners of psychologists on disciplinary charges, argued that they did not know the standards by which their conduct was to be judged because the substantive rules that the board had adopted had expired. Smith, 138 N.H. at 553. We explained that the board had authority under former RSA 330-A:14, II(c) to determine whether the plaintiffs had engaged in unprofessional conduct. Id. at 554. That statute authorized the board to take disciplinary action if "the plaintiffs' conduct was unprofessional conduct, or dishonorable conduct unworthy of, and affecting the practice of, the profession." Id. (quotation omitted); RSA 330-A:14, II(c) (Supp. 1993) (recodified as RSA 330-A:27, II(c) (2011)). We reasoned that

> [t]he forms which unprofessional conduct may take are numerous and varied, making it virtually impossible to set forth all of the acts which come within the meaning of the phrase. We will not hold that due process requires that the board anticipate every conceivable type of misconduct in which any of its licensees may indulge, and then fashion and announce a code to fit each act of misconduct.

Smith, 138 N.H. at 553-54 (quotation omitted).

RSA 332-B:14, II(c) uses language similar to the language that we addressed in Smith; accordingly, we reiterate that "[t]he forms which unprofessional conduct may take are numerous and varied," and, therefore, that due process did not require the Board to adopt specific rules defining unprofessional conduct. Id. at 553; see also Perez v. Hoblock, 368 F.3d 166,

175 (2d Cir. 2004) ("Limitations inherent in the English language often prevent the drafting of statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." (quotation omitted)); Rock of Ages Corp. v. Secretary of Labor, 170 F.3d 148, 156 (2d Cir. 1999) ("Courts have recognized . . . that regulations need not achieve meticulous specificity and may instead embody flexibility and reasonable breadth." (quotation omitted)).

"Unprofessional conduct" must relate to conduct that indicates an unfitness to practice the profession. Cf. Shea v. Board of Medical Examiners, 146 Cal. Rptr. 653, 660 (Ct. App. 1978) (holding that although unprofessional conduct should not be given an "overly broad connotation," "it must relate to conduct which indicates an unfitness to practice medicine"). The actions that constitute unfitness to practice are commonly established by the generally accepted practices and procedures within the professional community. Cf. Perez, 368 F.3d at 175-76 ("In evaluating [plaintiff's] vagueness claim, we must consider the context in which the regulation was enforced, i.e., we must evaluate [the plaintiff's] underlying conduct by reference to the norms of the racing community."); Rand v. Board of Psychology, 142 Cal. Rptr. 3d 288, 303 (Ct. App. 2012). Therefore, the Board, six of the seven members of which were veterinarians, may exercise its statutory authority to determine if the respondent's actions constituted "unprofessional conduct" because veterinarians, as professionals, are expected to recognize conduct evincing unfitness to practice their profession. See RSA 332-B:3, I (2011). We defer to the Board's findings that the respondent's excessive handling of Toby, and his failure to respect the owners' opinions and to conduct an initial exam, constitute "unprofessional conduct." See American Veterinary Medical Association, Principles of the Veterinary Medical Ethics § II(A) (2008) ("Veterinarians should first consider the needs of the patient: to relieve disease, suffering, or disability while minimizing pain or fear.").

The respondent cites cases in other jurisdictions concluding that statutes containing the phrase "unprofessional conduct," without supporting rules, are unconstitutionally vague. We have reviewed those cases, and they do not persuade us to depart from Smith. Moreover, we note that our holding is consistent with decisions in numerous jurisdictions that hold that the term "unprofessional conduct" is not unconstitutionally vague. See, e.g., Heabler v. Madigan, No. 12 C 6193, 2013 WL 5405679, at *6 (N.D. Ill. Sept. 24, 2013) (holding that plaintiff failed to state a claim by alleging that "unprofessional conduct," as used in statute, was unconstitutionally vague); cf. Shea, 146 Cal. Rptr. at 659-60 (holding that it is unnecessary to enumerate specific acts which constitute "unprofessional conduct," and that the term as used in the statute is not unconstitutionally vague); Chastek v. Anderson, 416 N.E.2d 247, 251 (Ill. 1981) (explaining that "terms such as 'unprofessional conduct' are susceptible to common understanding by the members of the profession," and,

6

therefore, when combined with the legislative purpose, are not "unconstitutionally vague"); Irwin v. Board of Regents of Univ. of State of N. Y., 304 N.Y.S.2d 319, 321 (App. Div. 1969) ("It is clear . . . that even without the benefit of . . . a regulation, the term 'unprofessional conduct' is sufficiently certain to a member of a profession to apprise him of the scope of permissible activities" and, therefore, the regulation defining "unprofessional conduct" is not unconstitutionally vague.).

Although "unprofessional conduct," as used in RSA 332-B:14, II(c), is sufficiently specific to support disciplinary action without supporting regulations, we note that, contrary to the respondent's assertion, the Board did adopt regulations clarifying the definition of "unprofessional conduct." New Hampshire Administrative Rules, Vet 501.02 states: "Conduct which violates the Principles of Veterinary Medical Ethics of the AVMA . . . shall constitute unprofessional or dishonorable conduct pursuant to RSA 332-B:14, II(c)."

The respondent further argues that the Board violated his due process rights because the first time in the administrative process that the Board stated that it was relying upon New Hampshire Administrative Rules, Vet 501.01 and 501.02, to define "unprofessional conduct" was in its objection to the respondent's motion for reconsideration.* He also argues that "there existed no articulated rule and no articulated standard upon which [he] reasonably had sufficient notice to defend himself." In essence, the respondent is arguing that the Board did not give him proper notice of the basis of the action against him, i.e., a failure to adhere to the Principles of Veterinary Medical Ethics of the AVMA. N.H. Admin. Rules, Vet 501.01, 501.02. We disagree.

The notice required in an administrative proceeding does not require the same formality, specificity, and detail that is required in a criminal proceeding. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands."); cf. Bourie v. Department of Higher Educ., 929 P.2d 18, 22 (Colo. Ct. App. 1996) (due process did not require employee in disciplinary hearing to receive reports, statements of witnesses or other evidence prior to pre-disciplinary meeting); McClellan v. Bd. of Regents of State, 921 S.W.2d 684, 688 (Tenn. 1996) (due process did not require citation to specified regulations in the notice of the administrative hearing). The charges need only be reasonably specific, in light of all the relevant circumstances, to apprise the party who is the subject of the hearing of the grounds for the administrative

---

* We note that the respondent's argument is factually inaccurate inasmuch as it was not the Board, but rather hearing counsel, who filed the objection to the respondent's motion for reconsideration and explicitly relied upon New Hampshire Administrative Rules, Vet 501.01 and 501.02.

action and to allow for the preparation of an adequate defense.  See Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); cf. Appeal of N.H. Fireworks, 151 N.H. 335, 338 (2004) (under State Constitution, "[a] fundamental requirement of the constitutional right to be heard is notice of the impending action that affords the party an opportunity to protect [a legally protected interest] through the presentation of objections and evidence" (quotation omitted)); Garofalo v. Dowling, 635 N.Y.S.2d 986, 989 (App. Div. 1996) (holding that notice that referred to "unacceptable practices" in amended regulations, rather than those in effect during audit period, did not violate due process).

In Campbell v. Board of Medical Examiners, 518 P.2d 1042, 1044-45 (Or. Ct. App. 1974), the petitioner argued that he did not receive adequate notice of the grounds for denial of a medical license because the Board relied upon a different statutory provision in denying his license than had been referred to in the "Bill of Particulars."  The Oregon Court of Appeals concluded that the notice was adequate under the United States Constitution, explaining:

> While the Bill of Particulars afforded petitioner here did not include references to all the particular sections of the statutes and rules which were conceivably involved . . . , it did spell out in sufficient detail all the conduct which was the basis of the Board's denial action. . . .  [T]he record . . . clearly shows that petitioner had detailed advance knowledge and was fully aware of the specific facts and charges which formed the basis of the action taken, in order to enable him to prepare his defense. . . .  Therefore we cannot say that the failure of the Board to append references to [particular statutory sections] amounted to a denial of due process of law.

Campbell, 518 P.2d at 1044-45.

Here, as in Campbell, although the "Notice of Hearing" did not expressly reference the relevant regulations, it spelled out in sufficient detail the factual circumstances that were the basis of the Board's reprimand.  We further note that one of the provisions that the Board cited in its "Notice of Hearing" as the potential grounds for discipline — RSA 332-B:14, II(c) — was the same provision that it ultimately relied upon when finding that the petitioner engaged in professional misconduct.  The Board thus identified the relevant legal authority for its decision.

Moreover, the identification of the statutory grounds was sufficient to direct the respondent to Rule 501.02. "[E]very person is presumed to know the law." Bennett v. Town of Hampstead, 157 N.H. 477, 485 (2008); see also United States v. Scott, 137 F. Supp. 449, 454 (E.D. Wis. 1956). Rule 501.02 explicitly defines "unprofessional or dishonorable conduct" relevant to RSA 332-B:14, II(c) as: "Conduct which violates the Principles of Veterinary Medical Ethics of the AVMA." N.H. Admin. Rules, Vet 501.02. Hence, given that the regulation clarifies the statutory definition cited in the "Notice of Hearing," the respondent had notice that violations of the Principles of Veterinary Medical Ethics of the AVMA could be deemed to be "unprofessional conduct."

The Principles of Veterinary Medical Ethics of the AVMA state, in pertinent part, that: "Both the veterinarians and the client have the right to establish or decline a Veterinarian-Client-Patient Relationship . . . and to decide on treatment." American Veterinary Medical Association, Principles of the Veterinary Medical Ethics § II(E) (2008). One of the requirements for such a relationship to exist is that "the veterinarian has recently seen and is personally acquainted with the keeping and care of the animal(s) by virtue of an examination of the animal(s)." Id. at § III(A)(2) (emphasis added). The Principles further state: "Veterinarians should . . . follow acceptable professional procedures using current professional and scientific knowledge." Id. at § II(H). These Principles were sufficient to provide the respondent with notice that the following actions constituted misconduct: failing to conduct a physical examination prior to the demonstration; failing to respect the opinion of the owners in proceeding to demonstrate dominance-submission techniques; and engaging in excessive restraint.

Accordingly, we conclude that a veterinarian would be aware that the conduct at issue in this case was prohibited "unprofessional conduct," and that, therefore, RSA 332-B:14, II(c) does not violate the respondent's constitutional right to due process. The record shows that the respondent had notice of the facts and charges that formed the basis of the action taken, and, therefore, that he had the opportunity to prepare his defense. And, in fact, the respondent presented a vigorous defense.

Finally, even if we assume that the notice was deficient because it failed to reference the regulations, the respondent has not demonstrated any prejudice, as he has not indicated what, if anything, he would have done differently either in the preparation of, or the presentation of, his defense. See Cabrera-Ramos v. Gonzales, 233 Fed. Appx. 449, 457 (6th Cir. 2007) ("A petitioner must at least produce concrete evidence indicating that the due process violation had the potential for affecting the outcome of the hearing." (quotation omitted)); cf. Griffin v. State Med. Bd., No. 11AP-174, 2011 WL 5868738, at * 9 (Ohio Ct. App. Nov. 22, 2011) (even if notice contained some deficiencies, no violation of appellant's due process rights).

9

For these reasons, we are not persuaded by the respondent's argument concerning the sufficiency of notice, and we conclude that his due process rights were not violated.

III. Standard of Care

The respondent next argues that the Board unlawfully or unreasonably sanctioned him because it did not require expert testimony on the standard of care, and there otherwise existed "no articulated standard upon which [he] reasonably had sufficient notice to defend himself." The Board responds that it was entitled to use its expertise and specialized knowledge to determine whether the respondent's conduct was unprofessional and, consequently, it did not need expert testimony in order to determine the standard of care and whether it had been violated. We agree with the Board.

We addressed a similar claim in Appeal of Boulard, 165 N.H. 300 (2013). In that case, the petitioner argued that expert testimony was required to establish the standard of care in an administrative disciplinary proceeding before the board of dental examiners. Appeal of Boulard, 165 N.H. at 305. We disagreed, reasoning that "[a]n administrative board has expertise and specialized knowledge to evaluate whether a party's conduct was unprofessional." Id. (quotation and brackets omitted). We explained that, although not all of the board of dental examiners' members had expert training in the particular area of sedation that was at issue in the case, "[l]ike other administrative bodies whose jurisdiction is limited to particular types of cases, the standard of ordinary care is within the competence of the board, and for this reason, expert testimony is not always necessary." Id. (quotation omitted); see also Huston, 150 N.H. at 415 (holding that Board could determine whether it was unprofessional for veterinarian to give rabies vaccination to deteriorating dog and take x-rays after dog died because "[t]he board was statutorily entitled to use its expertise and specialized knowledge to evaluate whether the petitioner's conduct was unprofessional").

The board of dental examiners in Appeal of Boulard consisted of six dentists, two dental hygienists, and one public member. Appeal of Boulard, 165 N.H. at 305; see also RSA 317-A:2, I (2005). Here, the Board's membership consists of six veterinarians, including the state veterinarian, and one public member. RSA 332-B:3, I. We conclude, as we did in Appeal of Boulard, that the respondent's violations — excessive handling of Toby, not respecting the owners' opinion that Toby had no dominance issues, and failing to conduct an initial examination — are not so complex as to be outside the competence of the Board to decide in the absence of expert testimony. Appeal of Boulard, 165 N.H. at 305.

10

The respondent cites <u>Webb v. State ex rel. Arizona Bd.</u>, 48 P.3d 505 (Ariz. Ct. App. 2002), to support his claim that, given the Board's "vague" findings, expert testimony was necessary in order to establish the standard of care. However, the respondent's reliance upon <u>Webb</u> is misplaced. The court in <u>Webb</u> explained that the Arizona Board of Medical Examiners <u>may</u> establish the standard of care based upon its members' experience and expertise. <u>Webb</u>, 48 P.3d at 510. Thus, <u>Webb</u> is in accord with our analysis in <u>Appeal of Boulard</u>. <u>See</u> <u>id</u>.; <u>Appeal of Boulard</u>, 165 N.H. at 305. Accordingly, we conclude that the Board had the authority to determine whether the respondent's actions constituted "unprofessional conduct" in the absence of expert testimony.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.