NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————

Board of Veterinary Medicine
No. 2017-0729


APPEAL OF SANDRA BROWN, DVM
(New Hampshire Board of Veterinary Medicine)

Argued: October 11, 2018
Opinion Issued: November 1, 2018

Steiner Law Office, PLLC, of Concord (R. James Steiner and Michael A. Chen on the brief, and Mr. Steiner orally), for the petitioner.


Gordon J. MacDonald, attorney general (Thomas Broderick, assistant attorney general, on the brief and orally), for the respondent.

HICKS, J. The petitioner, Sandra Brown, DVM, appeals an October 2017 decision by the respondent, the New Hampshire Board of Veterinary Medicine (Board), suspending her license to practice veterinary medicine for six months and further prohibiting her, following the six-month suspension and until December 31, 2021, from dispensing, possessing, or administering controlled substances (other than euthanasia solution) in her practice. On appeal, she argues that the Board lacked subject matter jurisdiction to discipline her for violating the Controlled Drug Act, see RSA ch. 318-B (2017 & Supp. 2017), because the Board is not one of the agencies statutorily authorized to enforce that act. She also asserts that the Board lacked jurisdiction to subject her practice to post-hearing inspections.

Although the petitioner makes other appellate arguments, we decline to address them substantively. Those arguments are not properly before us because, to the extent that the petitioner raised them before the Board, she did so, for the first time, in an untimely motion for reconsideration, which is insufficient to preserve them for our review. See RSA 541:3, :4 (2007); cf. In the Matter of Sweatt & Sweatt, 170 N.H. 414, 424 (2017) (concluding that, "because the respondent did not raise [his appellate] arguments in the trial court or in a timely motion for reconsideration, they are not preserved for our review"). We affirm.

The Board found, or the certified record supports, the following facts. In May and June of 2013, the Board received complaints from two of the petitioner's former employees alleging, among other things, that she improperly managed medication and equipment. After investigating the complaints, the Board commenced an adjudicatory proceeding. See RSA 332-B:15 (2017). Based upon the evidence at the hearing, the Board determined that the petitioner had committed professional misconduct within the meaning of RSA 332-B:14, II(d) (2017) because she had "engaged in a pattern of conduct inconsistent with the basic skills and knowledge required to practice veterinary medicine." The Board decided that, despite the instances of misconduct, it would not suspend or revoke the petitioner's license, but would, instead "impos[e] a series of remedial measures designed to improve [her] overall medical knowledge and competence." As a result, the Board ordered that the petitioner's "practice [would] be subject to [B]oard inspections, which [might] be announced or unannounced, for a period of four . . . years" from the Board's September 2015 decision. Such inspections would include examining the petitioner's records as well as reviewing her "hospital[,] surgical[,] . . . medical[,] . . . [and] management practices." Documents in the certified record suggest that the petitioner may have signed a settlement agreement with the Board in which she agreed to the inspections. See RSA 332-B:14, IV, :16, V (2017) (authorizing the Board to dispose of allegations by entering into a settlement agreement or consent order).

The Board inspected the petitioner's practice in May, September, and December 2016. The Board of Pharmacy, on behalf of the Board, inspected her practice in October 2016. See RSA 318:9-a (2015). As a result of the findings from those inspections, the Board commenced another adjudicatory proceeding against the petitioner. See RSA 332-B:15. Following a hearing, the Board found that she had committed professional misconduct within the meaning of RSA 332-B:14, II (2017).

Specifically, the Board found that the petitioner had continually and willfully prescribed and used expired medications, even after having been notified not to do so. See RSA 332-B:14, II(d). The Board determined that doing so was "dangerous as expired medications can develop increased potency, decreased potency, or become toxic." The Board found that the

2

petitioner's conduct was willful, observing that she had "[gone] so far as to make a waiver to justify the use of expired medication."  See id.

Additionally, the Board found that the petitioner "consistently showed a nonchalant attitude towards the multiple investigations and hearings" and that she failed to "take remedial corrective measure[s] in a timely fashion" after prior investigations had brought problems to her attention.  See RSA 332-B:14, II(g).

The Board further found that the petitioner failed "to keep" her "veterinary premises and equipment in a safe, clean, and sanitary condition." RSA 332-B:14, II(*l*).  According to the Board, the petitioner's "mobile [veterinary] unit was . . . disorganized, contained expired medications, and there were no actions being taken to maintain an appropriate temperature to store the medication properly."

Also, the Board found that the petitioner's medical record-keeping demonstrated "a continued pattern of not being forthcoming with clients," in that she failed to document discussions with clients about adverse outcomes, including one instance in which her medical error led to the death of an animal in her care.  See RSA 332-B:14, II(n).

Finally, the Board found that the petitioner violated RSA 318-B:10, II (2017) by filling prescriptions for schedule IV controlled substances for more than a seven-day supply on multiple occasions, and that she violated RSA 318-B:12, I (2017) by "failing to adequately and accurately keep controlled drug records."  The Board "felt that [the petitioner] showed a lack of concern at the seriousness" of the inaccurate controlled drug records.  The Board expressed "significant concerns regarding [her] ability to properly prescribe and maintain controlled substances."  The Board ruled that the violations of RSA 318-B:10, II and :12, I, constituted "unprofessional conduct" within the meaning of RSA 332-B:14, II(c).  See N.H. Admin. R., Vet 501.02 (providing that "[c]onduct which violates the Principles of Veterinary Medical Ethics of the AVMA as revised April 2016" constitutes "unprofessional or dishonorable conduct pursuant to RSA 332-B:14, II(c)"); see also American Veterinary Medical Association, Principles of Veterinary Medical Ethics of the AVMA § IV (2016) ("A veterinarian shall respect the law," which means that he or she "should obey all laws of the jurisdictions in which [he or she] reside[s] and practice[s] veterinary medicine."), available at https://www.avma.org/KB/Policies/Pages/ Principles-of-Veterinary-Medical-Ethics-of-the-AVMA.aspx.

Because of this conduct, in addition to suspending the petitioner's veterinary license for six months, the Board ordered that, after the suspension and until December 31, 2021, she would "be limited to practice veterinary medicine without controlled substances, with the exception of euthanasia solution," meaning that she would "be unable to dispense or administer controlled substances" and could not keep such substances (other than

3

euthanasia solution) "on the clinic grounds or in the mobile unit." However, the Board specified that the petitioner would "maintain the ability to prescribe controlled substances via outside pharmacies."

The Board issued its decision on October 3, 2017. Approximately ten days later, the petitioner filed a timely motion for rehearing, see RSA 541:3, in which she admitted that she filled a prescription for a controlled drug for more than a seven-day supply and that her controlled drug logbooks contained inaccuracies. She also admitted to having dispensed expired medications. She stated that she accepted the Board's "limitation on her veterinary license to practice without controlled substances, with the exception of euthanasia," but requested that the restrictions be modified so as to allow her to use Butorphanol. Approximately one month after filing her motion for rehearing, the petitioner requested permission to prescribe controlled drugs and suggested that the Board "appoint a person it deems fit to oversee [her] compliance with controlled drugs." On November 28, 2017, after reviewing the petitioner's motion and supplement thereto as well as the objection filed by hearing counsel, the Board denied the motion, concluding that its decision on the merits contained no errors.

On December 21, 2017, the petitioner filed a second motion for rehearing in which, for the first time, she argued that the Board: (1) lacked authority "to regulate the prescription, storage or dispensing of . . . controlled drugs," and, therefore, could not have determined that the petitioner committed misconduct within the meaning of RSA 332-B:14, II(d) by continually prescribing expired medications; (2) violated the petitioner's state and federal constitutional rights to due process by arbitrarily creating a standard of care with respect to the recording of communications with clients; and (3) improperly determined that she violated provisions of the Controlled Drug Act because the Board "is not the administrative or judicial body to oversee, adjudicate, or enforce" that act and, by so doing, infringed upon her due process rights.

On December 27, 2017, the petitioner filed a timely appeal in this court, challenging the Board's October merits decision and its November denial of her first motion for rehearing. The Board denied the petitioner's second motion approximately one month later, on February 8, 2018. The Board "again concluded there were no . . . errors of fact, errors of reasoning, or erroneous conclusions" in its October 2017 order on the merits, and observed that the petitioner's second motion for rehearing "was filed well outside" the statutory time frame for such motions. See id.

On appeal, the petitioner argues, among other things, that the Board lacked subject matter jurisdiction to discipline her for allegedly violating the Controlled Drug Act. She asserts that "the authority to . . . enforce the Controlled Drug Act lies with the Board of Pharmacy" and that the Board in this case "is not authorized to . . . sanction a practitioner based on alleged

4

violations of the Controlled Drug Act." Although the petitioner raised this argument for the first time in her second, untimely motion for rehearing, we address it because "the issue of subject matter jurisdiction may be raised at any time in the proceedings." Route 12 Books & Video v. Town of Troy, 149 N.H. 569, 575 (2003).

"RSA chapter 541 governs our review of [B]oard decisions." Appeal of Huston, 150 N.H. 410, 411 (2013); see RSA 332-B:16, VII (2017). "[W]e will not set aside the [B]oard's order except for errors of law, unless we are satisfied by a clear preponderance of the evidence, that it is unjust or unreasonable." In the Matter of Bloomfield, 166 N.H. 475, 478 (2014) (quotation omitted); see RSA 541:13 (2007). "The [B]oard's findings of fact are presumed prima facie lawful and reasonable." In the Matter of Bloomfield, 166 N.H. at 478 (quotation omitted); see RSA 541:13. "In reviewing the Board's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but rather, to determine whether the findings are supported by competent evidence in the record." In the Matter of Bloomfield, 166 N.H. at 478. We review the Board's rulings on issues of law de novo. Appeal of Huston, 150 N.H. at 411.

"Administrative agencies are granted only limited and special subject matter jurisdiction." Appeal of Campaign for Ratepayers' Rights, 162 N.H. 245, 250 (2011) (quotation and ellipsis omitted). "That jurisdiction is dependent entirely upon the statutes vesting the agency with power and the agency cannot confer jurisdiction upon itself." Id. (quotation and brackets omitted).

To determine whether the Board had subject matter jurisdiction to discipline the petitioner for violating the Controlled Drug Act, we examine RSA chapter 332-B, the Veterinary Practice Act. See RSA ch. 332-B (2017 & Supp. 2017). We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Robinson v. N.H. Real Estate Comm'n, 157 N.H. 729, 731 (2008). We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. Id. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute. Id. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. Id. By so doing, we are better able to discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id.

The stated purpose of the Board "is to promote public health, safety, and welfare by safeguarding the people of New Hampshire against incompetent, unscrupulous, and unauthorized persons and from unprofessional or illegal practices by persons licensed to practice veterinary medicine." RSA 332-B:1-a

(2017). Towards those ends, RSA chapter 332-B authorizes the Board to: (1) "[e]xamine and determine the qualifications and fitness of applicants for a license to practice veterinary medicine in this state"; (2) "[i]ssue, renew, deny, suspend, revoke licenses and temporary permits to practice veterinary medicine in the state or otherwise discipline licensed veterinarians consistent with the provisions of [RSA] chapter [332-B] and the rules and regulations adopted thereunder"; (3) "[e]stablish [licensing] fees"; (4) "[c]onduct investigations and hearings as provided in RSA 332-B:15 and RSA 332-B:16"; and (5) "[b]ring proceedings in the courts" to enforce RSA chapter 332-B "or any regulations made pursuant thereto." RSA 332-B:7, I-IV, VIII (2017).

RSA 332-B:14 (2017) governs disciplinary proceedings by the Board. Pursuant to RSA 332-B:14, II, "[m]isconduct sufficient to support disciplinary proceedings" includes "[a]ny unprofessional conduct, or dishonorable conduct unworthy of, and affecting the practice of, the profession." RSA 332-B:14, II(c). RSA 332-B:14, III allows the Board to revoke, suspend, limit, or restrict a veterinarian's license because of misconduct. RSA 332-B:14, III(b), (c). Thus, RSA chapter 332-B allows the Board to discipline a veterinarian for engaging in "any unprofessional" or "dishonorable" conduct. RSA 332-B:14, II(c).

Consistent with its rule-making authority under RSA 332-B:7-a (Supp. 2017), the Board has adopted regulations clarifying that "[c]onduct which violates the Principles of Veterinary Medical Ethics of the AVMA as revised April 2016" constitutes "unprofessional or dishonorable conduct pursuant to RSA 332-B:14, II(c)." N.H. Admin. R., Vet 501.02. Those principles, in turn, exhort veterinarians to "obey all laws" of the jurisdiction in which they "reside and practice veterinary medicine." American Veterinary Medical Association, supra § IV(a).

Although we need not decide the full scope of the Board's jurisdiction to discipline a veterinarian for the violation of "all laws," we conclude that the Board had subject matter jurisdiction to discipline the petitioner for violating the Controlled Drug Act. Even if we assume without deciding that the Board's jurisdiction is limited to disciplining licensed veterinarians for violating laws bearing a nexus to the Board's purpose of promoting "public health, safety, and welfare" by protecting the public from "incompetent, unscrupulous, and unauthorized persons and from unprofessional or illegal practices by" licensed veterinarians, RSA 332-B:1-a, the violations of the Controlled Drug Act at issue plainly fall within that jurisdiction.

Contrary to the petitioner's assertions, nothing in the Controlled Drug Act compels a different conclusion. Nothing in that act precludes the Board from disciplining a veterinarian for engaging in "unprofessional" conduct that includes violating provisions of the Controlled Drug Act. Indeed, the Board has the exclusive authority to subject licensed veterinarians to professional discipline. See RSA 332-B:7, :14, :15, VI, :15-a (2017); cf. RSA 332-B:9, :17 (2017).

6

The petitioner also asserts that the Board lacked jurisdiction to subject her practice to inspections pursuant to its September 2015 order and that the Board, therefore, "relied impermissibly" on those inspections and on the inspecting veterinarian's testimony. However, documents in the certified record suggest that the petitioner agreed, at the very least implicitly, to the inspections as part of a settlement agreement with the Board. Moreover, RSA 332-B:14, III(b) authorizes the Board to discipline a licensee by restricting or limiting that individual's license. Subjecting an individual's practice to periodic inspections is a form of restriction or limitation on that person's license to practice veterinary medicine.

For all of the above reasons, we hold that the Board had subject matter jurisdiction to discipline the petitioner for violating the Controlled Drug Act and to subject her practice to post-hearing inspections.

<u>Affirmed</u>.

LYNN, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.