NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Department of Safety
No. 2021-0053


APPEAL OF TRADZ, LLC
(New Hampshire Department of Safety)

Argued: February 17, 2022
Opinion Issued: April 8, 2022

Wadleigh, Starr & Peters, PLLC, of Manchester (Craig Donais and Stephen Zaharias on the brief, and Stephen Zaharias orally), for Tradz, LLC.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Christina M. Wilson, assistant attorney general, on the brief and orally), for the New Hampshire Division of Motor Vehicles.

DONOVAN, J. The petitioner, Tradz, LLC, appeals a decision of the New Hampshire Department of Safety, Bureau of Hearings (bureau), affirming a decision of the respondent, the New Hampshire Division of Motor Vehicles (DMV), denying the petitioner's applications for title to ten motor vehicles. The petitioner argues that the bureau erred by concluding that New Hampshire's abandoned vehicle statute, RSA 262:40-a (2014), did not provide a basis for it to obtain title to the vehicles. We affirm.

## I. Facts

The following facts were found by the bureau, are supported by the record, or are otherwise undisputed. The petitioner is a New Hampshire company that performs towing and repossession services. In or about early 2020, the petitioner submitted title applications for ten motor vehicles, claiming that all of the vehicles were abandoned. Six of the vehicles were subject to liens and were towed by the petitioner at the request of lienholders. Three of the vehicles were towed by the petitioner from a dealership in Concord. One of the vehicles was towed by the petitioner from the vehicle owner's property in Massachusetts allegedly at the vehicle owner's request. The petitioner towed all of the vehicles to its property in New Hampshire.

In its title applications, the petitioner claimed title to the vehicles pursuant to New Hampshire's abandoned vehicle statute, asserting that the vehicles were either abandoned when the petitioner towed them or subsequently became abandoned. See RSA 262:40-a, I. The petitioner asserted that, even though it provided notice to the owners and the lienholders in accordance with RSA 262:34 (Supp. 2021), no one paid the towing or storage fees, nor did anyone attempt to reclaim the vehicles from its possession. The petitioner further asserted that, after providing additional notice in accordance with RSA 262:38 (Supp. 2021), it sold the vehicles to itself at public auction for one dollar each pursuant to RSA 262:36-a (Supp. 2021) and RSA 262:37 (2014).

Ultimately, the DMV denied the applications. With respect to the six vehicles that the petitioner towed at the request of the lienholders, as well as the vehicle it towed from Massachusetts, the DMV determined that the petitioner had repossessed the vehicles, and, for that reason, the abandoned vehicle statute did not apply. With respect to the three vehicles that the petitioner towed from the dealership, the DMV conducted an investigation and denied the applications on the basis that the property owner did not request the petitioner to tow the vehicles pursuant to RSA 262:40-a, I.

In December 2020, at the petitioner's request, the bureau held a hearing to review the denials. At the hearing, the bureau heard testimony from the petitioner's general manager and one of its employees. The bureau also heard testimony from the DMV's deputy director and the chief of its title bureau, both of whom were involved in reviewing and investigating the applications. Thereafter, the bureau issued an order affirming the denials "on the basis that the process followed constituted an attempt to circumvent repossession requirements by attempting to categorize them as abandoned vehicles." (Quotation omitted.) The bureau further concluded that "[t]he vehicles cannot fit the definition of an abandoned vehicle when they are actually repossessed vehicles."

With respect to the six vehicles that the petitioner towed at the lienholders' request, the bureau concluded that the petitioner had engaged in "a concerted effort to try to turn a repossession process into an abandoned vehicle." In addition, with respect to the vehicle that the petitioner towed from Massachusetts, the bureau characterized the petitioner's application as "another work around to avoid the [Massachusetts] titling requirements," noting that "this is not the forum to determine if this transaction complied with [Massachusetts] law."

With respect to the vehicles that the petitioner towed from the dealership, the bureau noted that "[t]he DMV investigation revealed that there was no record of [the dealership] giving notice of removal to a peace officer," as required by RSA 262:40-a, I. The bureau further observed that "it strains credulity that two late model . . . vehicles were parked without permission or apparently abandoned" at the dealership. (Quotation and ellipsis omitted.) Thus, the bureau concluded that "[t]his was clearly an attempt to categorize vehicles as 'abandoned' that were actually repossessed vehicles." The bureau also concluded that, because the petitioner sold one of the vehicles to a private buyer prior to the hearing, the issues pertaining to that vehicle were moot.

The petitioner filed a motion for rehearing, which the bureau denied. In denying the motion, the bureau issued an order with additional findings of fact and rulings of law and reaffirmed its conclusion that the abandoned vehicle statute does not apply to repossessed vehicles. With respect to the vehicles that the petitioner towed from the dealership, the bureau also found, among other things, that "the General Manager of the dealership disavowed any knowledge of the tow or having given anyone the authority to arrange for a tow." Thus, the bureau concluded that "the preponderance of the evidence is that the tow was not authorized by the 'property owner,'" as required by RSA 262:40-a, I. This appeal followed.

## II. Standard of Review

RSA chapter 541 governs our review of the bureau's decision. See RSA 21-P:13, II-a (2020); see also RSA 541:13 (2021). We will not set aside the decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. RSA 541:13. The bureau's findings of fact are presumed prima facie lawful and reasonable. See id. The appealing party bears the burden of proving that the decision is unjust or unreasonable. Id. When reviewing the bureau's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the bureau's findings are supported by competent evidence. See Appeal of Brown, 171 N.H. 468, 473 (2018). We review the bureau's rulings on issues of law de novo. See id.

3

Resolving the petitioner's appeal requires that we interpret several provisions of the relevant statutory scheme. Statutory interpretation presents a question of law, which, as explained above, we review de novo. See Sivalingam v. Newton, 174 N.H. 489, 494 (2021). In matters of statutory interpretation, the intent of the legislature is expressed in the words of the statute considered as a whole. See id. We first look to the language of the statute itself and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret statutes as written, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id.

### III. Analysis

The petitioner argues that the bureau erred by concluding that the abandoned vehicle statute did not provide a basis for the petitioner to obtain title to the vehicles. RSA 262:40-a, I, provides, in relevant part:

> I. The owner or person in lawful possession of any private property . . . on which a vehicle is parked without permission or is apparently abandoned may:
>
> (a) Cause the removal of the vehicle in a reasonable manner provided he or she gives notice of such removal to a peace officer as soon as reasonably possible; or
>
> (b) Notify a peace officer that he or she wishes to have such a vehicle removed from the property, whereupon the peace officer or another authorized official shall cause the removal of such vehicle pursuant to the removal, impoundment, and notice procedures required by this subdivision.

RSA 262:40-a, I.

When a vehicle is removed from private property pursuant to RSA 262:40-a, I, the vehicle's registered owner is entitled to notice of the removal. See RSA 262:34. In addition, the vehicle's registered owner — rather than the person who requested the removal — is responsible for the cost of the removal, including reasonable towing and storage fees. See RSA 262:40-a, IV.

If, within a statutorily-defined period of time, the registered owner fails to retrieve the vehicle from the company that is storing it, the storage company may sell the vehicle at public auction, provided that the company gives the registered owner adequate notice. See RSA 262:36-a, :37, :38. The storage company may apply the proceeds of the sale toward the cost of towing and

4

storing the vehicle.  See RSA 262:39 (2014).  The balance of the proceeds, if any, belongs to the owner, and if the owner fails to claim the balance within one year, it "shall be paid into the state treasury for the use of the state."  Id. New Hampshire Administrative Rule, Saf-C 1913.01 sets forth the process for obtaining title to an abandoned vehicle that is purchased at public auction.

A separate statutory scheme governs the repossession of motor vehicles. Repossession is "the act of obtaining physical possession of a motor vehicle by a lienholder or any person acting on his behalf for any actual or claimed breach of any condition contained in a security agreement."  RSA 259:87-a (2014).  A lienholder's right to repossess a vehicle in the event of default is governed by the Uniform Commercial Code.  See RSA 382-A:9-609 (2011).  Upon repossession, the lienholder may sell the vehicle, provided that the lienholder satisfies certain requirements.  See RSA 382-A:9-611 to -612 (2011).  New Hampshire Administrative Rule, Saf-C 1916.01 sets forth the process for obtaining title to vehicles that are purchased after repossession.  With this framework in mind, we turn to the issues presented in the petitioner's appeal.

A. Vehicles Towed at the Request of the Lienholders

We begin by addressing the six vehicles that the petitioner towed at the request of the lienholders.  The bureau found, and the record supports its finding, that the petitioner repossessed all six of these vehicles on the lienholders' behalf, consistent with the definition set forth in RSA 259:87-a. The petitioner does not challenge this finding.  Instead, the petitioner argues that the bureau erred as a matter of law by concluding that repossessed vehicles fall outside the scope of the abandoned vehicle statute.  The petitioner asserts that nothing in the relevant statutory and regulatory schemes prevents repossessed vehicles from "simultaneously meeting both the definition of a repossession and an abandoned vehicle."  Even assuming that, under certain circumstances, the abandoned vehicle statute applies to repossessed vehicles, we conclude that the abandoned vehicle statute did not apply to the six repossessed vehicles at issue here.

When, as here, a towing company initiates repossession of a vehicle on a lienholder's behalf, consistent with RSA 259:87-a, the towing company's services do not fall within the scope of RSA 262:40-a, I.  By definition, a lienholder who repossesses a motor vehicle — or who hires a towing company to do so on his or her behalf — does not have physical possession of the vehicle, but, rather, seeks to "obtain[] physical possession" through the repossession process.  RSA 259:87-a.  By contrast, when a towing company removes a vehicle pursuant to RSA 262:40-a, I, the person requesting the removal already has physical possession of the vehicle, which "is parked without permission or is apparently abandoned" on his or her private property. RSA 262:40-a, I.  Thus, the services a towing company provides pursuant to

5

RSA 262:40-a, I, are mutually exclusive of the services it provides when it repossesses a vehicle on a lienholder's behalf.

Because the evidence supports a finding that the petitioner repossessed six of the ten vehicles on the lienholders' behalf, consistent with RSA 259:87-a, the evidence also supports a finding that the petitioner did not remove these vehicles pursuant to RSA 262:40-a, I. There is no evidence that the lienholders who hired the petitioner were "owner[s] or person[s] in lawful possession of . . . private property" upon which the vehicles were "apparently abandoned." RSA 262:40-a, I. We therefore conclude that the abandoned vehicle statute did not apply to these six vehicles.[1]

The petitioner argues, however, that, even if these vehicles "began as repossessions," they subsequently became abandoned on the petitioner's property when the lienholders and vehicle owners failed to pay the towing and storage fees and did not attempt to reclaim the vehicles from the petitioner's possession. According to the petitioner, "[w]hen vehicles are towed in the first instance, it is difficult, if not impossible, to conclusive[ly] determine whether a vehicle is truly abandoned." Thus, the petitioner asserts that "abandonment cannot . . . conclusively be determined until after the notification process . . . is completed and no one claims or retrieves the vehicle." At that point, the petitioner contends, "the statutory and regulatory process pertaining to abandoned vehicles should apply with respect to obtaining titles to such vehicles."

We need not address this argument because, even if the six repossessed vehicles became "apparently abandoned" on the petitioner's property, RSA 262:40-a, I, the relevant statutory scheme did not authorize the petitioner to sell the vehicles to itself at public auction, and, thus, did not provide a basis for the petitioner to obtain title to the vehicles. RSA 262:36-a, I, provides that, under certain circumstances, "the storage company may dispose of" vehicles that have been "removed or stored <u>pursuant to</u> RSA 262:33 or RSA 262:40-a."[2]

---

[1] The petitioner asserts that "[o]ne issue here is whether a vehicle that is out for repossession" — meaning that the lienholder has ordered the repossession, but the repossession has not yet occurred — "can be considered abandoned" under the abandoned vehicle statute. Given the facts relevant to these six vehicles, we need not address this issue. The record demonstrates that the petitioner, in fact, repossessed the vehicles consistent with RSA 259:87-a, not that the petitioner removed the vehicles at the request of a private property owner pursuant to RSA 262:40-a, I, while the vehicles were "out for repossession."

[2] RSA 262:33 sets forth the procedure for removing and storing vehicles pursuant to RSA 262:32, which allows "[a]n authorized official" to "cause the removal and storage of a vehicle" under certain circumstances. The petitioner does not argue that these provisions apply to any of the vehicles at issue in this case, and the record contains no evidence that "[a]n authorized official" requested the petitioner to remove or store the vehicles. RSA 262:32. Therefore, for the purpose of this appeal, we need only consider whether the petitioner performed services pursuant to RSA 262:40-a.

6

RSA 262:36-a, I (emphasis added).  Similarly, RSA 262:37 provides that "the custodian of the vehicle" may dispose of the vehicle by selling it at public auction, provided that the vehicle was "stored pursuant to this subdivision and all the requirements of RSA 262:36-a have been met."  RSA 262:37 (emphasis added).  We interpret the phrase "this subdivision" in RSA 262:37 as referencing RSA 262:31 to :40-c (2014 & Supp. 2021) (titled "Abandoned Vehicles").

Based upon the foregoing language, we conclude that the purpose of the above-referenced disposal provisions is to allow companies who perform services pursuant to RSA 262:40-a, I, to recover fees for those services.  See RSA 262:36-a, :37.  As explained above, the petitioner did not initially remove the vehicles pursuant to RSA 262:40-a, I, but, rather, repossessed them on behalf of the lienholders consistent with the definition set forth in RSA 259:87-a.  Accordingly, to hold that these provisions authorized the petitioner to sell the six repossessed vehicles to itself at public auction would contravene the plain language of the abandoned vehicle statute and its corresponding disposal provisions.

Moreover, even assuming, as the petitioner argues, that the lienholders abandoned these vehicles on the petitioner's property, the petitioner was merely an "owner or person in lawful possession of . . . private property" upon which the vehicles were "apparently abandoned."  RSA 262:40-a, I.  The petitioner could have, therefore, caused the removal of the vehicles in a reasonable manner, RSA 262:40-a, I(a), or notified a peace officer that it wished to have the vehicles removed from the property, RSA 262:40-a, I(b).  However, nothing in the statutory scheme authorizes an "owner or person in lawful possession of . . . private property" to sell or otherwise dispose of such vehicles.  RSA 262:40-a, I; see RSA 262:36-a to :40-a.  It would contravene the plain language of the abandoned vehicle statute to conclude that, as the owner of private property upon which the vehicles were apparently abandoned, the petitioner performed any services pursuant to RSA 262:40-a, I.  Accordingly, we conclude that the abandoned vehicle statute and its corresponding disposal provisions did not authorize the petitioner to sell these six vehicles to itself at public auction, and, therefore, did not provide a lawful basis for the petitioner to obtain title to them.

### B. Vehicles Towed from the Dealership

We next address the petitioner's arguments with respect to the three vehicles that the petitioner towed from the dealership in Concord.  The petitioner argues that the bureau erred by concluding that these vehicles were not subject to the abandoned vehicle statute.  Even if we conclude, contrary to the bureau's finding, that they were not repossessed, the evidence supports the bureau's finding that the dealership did not request that the petitioner remove the vehicles pursuant to RSA 262:40-a, I.  At the hearing, the chief of the

7

DMV's title bureau testified that, after investigating the removal of these vehicles, the DMV "confirmed that the property owner did not order the tow." Similarly, the DMV's deputy director testified that the dealership's regional sales manager denied that anyone at the dealership requested the petitioner to tow the vehicles. The deputy director further testified that, according to the sales manager, the dealership "exclusively uses" another company for towing services. In addition, the deputy director testified that the DMV was unable to determine "how [the petitioner] came into lawful possession" of those vehicles.

The petitioner, on the other hand, argues that the evidence presented at the hearing supported a finding that Jason Asbury, a former sales manager of the dealership, requested the petitioner to remove the vehicles pursuant to RSA 262:40-a, I. The petitioner relies upon testimony from both of its witnesses that Mr. Asbury expressly authorized the removals and gave the vehicles' factory keys to one of the petitioner's employees. In the petitioner's view, "[t]here is no other way [the petitioner] could have obtained the factory keys without being given the same by an authorized [dealership] representative." In addition, the deputy director testified that, during an interview with the DMV's investigative team, Mr. Asbury stated that the vehicles were towed "with permission from" another manager at the dealership.

Nonetheless, because neither Mr. Asbury nor the dealership's sales manager testified at the hearing, the bureau did not have an opportunity to assess the credibility of their statements.[3] To the extent that the witnesses who testified at the hearing provided conflicting testimony, we defer to the bureau's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. See Appeal of Liberty Assembly of God, 163 N.H. 622, 634 (2012). As explained above, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the bureau's findings are supported by competent evidence. Brown, 171 N.H. at 473. We therefore conclude that the evidence supported the bureau's finding that, with respect to the vehicles that the petitioner towed from the dealership, "the tow was not authorized by the 'property owner,'" as required by RSA 262:40-a, I.

To the extent that the petitioner argues that these vehicles later became "apparently abandoned" on its property when no one attempted to reclaim the vehicles or pay the towing and storage fees, we iterate our earlier conclusion

---

[3] The petitioner asserts that it "would have called [Mr.] Asbury to testify had there been sufficient time, but the examiner cut the hearing short and did not allow [the petitioner] to present more than two witnesses." To the extent that the petitioner argues that the bureau erred by "cut[ting] the hearing short," we conclude that any such argument is not preserved and is insufficiently developed, and we decline to address it. See RSA 541:4 (2021); State v. Blackmer, 149 N.H. 47, 49 (2003).

that, even under such circumstances, the statute did not authorize the petitioner to sell the vehicles. As explained above, the petitioner was merely an "owner or person in lawful possession of . . . private property," RSA 262:40-a, I, and because it did not — and, indeed, could not — perform any services pursuant to RSA 262:40-a, I, it was not entitled to dispose of the vehicles pursuant to RSA 262:36-a and RSA 262:37. Accordingly, the bureau correctly ruled that the abandoned vehicle statute did not provide a basis for the petitioner to obtain title to these vehicles.

C. Vehicle Towed from the Vehicle Owner's Property in Massachusetts

Finally, we turn to the petitioner's arguments with respect to the vehicle that it removed from the vehicle owner's property in Massachusetts. The petitioner argues that the vehicle owner abandoned the vehicle on her own property and that the bureau's decision with respect to this vehicle was premised upon a flawed assumption: that a person cannot abandon his or her own vehicle on his or her own property. We need not address this argument because we conclude that RSA 262:40-a, I, does not apply to vehicles that are removed from property located outside of New Hampshire.

"Every state has entire jurisdiction over all property, personal as well as real, within its own territorial limits." Clark v. Tarbell, 58 N.H. 88, 88 (1877) (emphasis added). In the absence of a valid choice of law provision, property located in one state cannot be affected by the law of any other state. See 16 Am. Jur. 2d Conflict of Laws § 41, at 61 (2009) (explaining that "[t]he dominion of a state over personal or moveable property within its borders is complete, and its right to regulate the transfer of such property and to subject it to process and execution in its own way and by its own laws is unquestioned"); see also Curry v. McCanless, 307 U.S. 357, 365 (1939) (recognizing the "generally accepted" principle "[t]hat rights in tangibles—land and chattels—are to be regarded in many respects as localized at the place where the tangible itself is located for purposes of the jurisdiction of a court to make disposition of putative rights in them" and "for purposes of conflict of laws"). Interpreting RSA 262:40-a, I, as applying to vehicles that are "apparently abandoned" on out-of-state property would contravene this fundamental principle, undermining the authority of other states to regulate property located within their borders. We will not assume that the legislature intended such an absurd result. See Hogan v. Pat's Peak Skiing, LLC, 168 N.H. 71, 75 (2015) (noting that "it is not to be presumed that the legislature would pass an act leading to an absurd result").

We therefore conclude that, with respect to the vehicle that the petitioner removed from Massachusetts, the abandoned vehicle statute did not apply to the petitioner's removal of the vehicle to New Hampshire. To the extent that the petitioner argues that this vehicle later became "apparently abandoned" on

9

its property in New Hampshire, we reiterate our conclusion that, under such circumstances, the disposal provisions that correspond to the abandoned vehicle statute did not authorize the petitioner to sell the vehicle at public auction.[4] Accordingly, the bureau did not err by upholding the denial of the petitioner's title application for this vehicle.

<u>Affirmed</u>.

HICKS and HANTZ MARCONI, JJ., concurred.

---

[4] We note that the petitioner has not argued, either before the bureau or on appeal, that Massachusetts law or a New Hampshire statute, other than the abandoned vehicle statute, provides a basis for it to obtain title to this vehicle. Accordingly, any such argument is unpreserved, and we need not address it. See State v. Batista-Salva, 171 N.H. 818, 822 (2019).